# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

EDWARD WILLIAMS,

    Plaintiff,

    v.

STEPHEN M. MOYER,

    Defendant.

Civil Action No.:  TDC-18-1932

## MEMORANDUM OPINION

Plaintiff Edward Williams, an inmate at the Eastern Correctional Institution ("ECI") in Westover, Maryland, has filed a Complaint under 42 U.S.C. § 1983 against Defendant Stephen M. Moyer, the former Secretary of the Maryland Department of Public Safety and Correctional Services ("DPSCS"), alleging unspecified violations arising from an incident in which he slipped and fell on spilled water at a Maryland correctional facility.  Pending before the Court is Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment ("Motion for Summary Judgment").  Although Williams was provided notice of the Motion, he has not opposed it.  Upon consideration of the submitted materials, the Court finds that no hearing is necessary.  *See* D. Md. Local R. 105.6.  For the reasons set forth below, the Motion for Summary Judgment will be granted.

## BACKGROUND

### I.     Williams's Fall

In his unverified Complaint, Williams asserts that on April 7, 2016, while he was incarcerated at the Maryland Reception Diagnostic Classification Center ("MRDCC"), he slipped

and fell because there was water on the floor of his cell. When Williams fell, he struck his back, arms, and head on the floor. Williams claims that the water had been on the floor of his cell for three days prior to his fall and that his cellmate, Anthony Phillips had notified Officer Stepney of the problem.

According to Lawrence Walker, the DPSCS Acting Correctional Maintenance Service Manager, tier logs for MRDCC Housing Unit 5C, where Williams's cell was located, reveal that at 9:47 a.m. on April 7, 2016, a maintenance worker was checking the sprinkler system in the unit. The water was turned on to check the sprinkler, causing flooding in cells 24, 26, 27, and 32. At 9:48 a.m., a call was made to request sanitation and water clean-up workers. At 10:25 a.m., three sanitation workers arrived in the unit and used wet vacuums to clean up the water on the top and bottom tiers of Housing Unit 5C. At 10:56 a.m., Williams's cellmate reported that Williams had fallen when he was walking to the toilet in cell 5C-02. At 11:50 a.m., the sanitation workers left the tier for lunch and returned at 1:20 p.m. There is no record of Williams leaving the tier for medical attention.

## II.    ARPs

The following day, on April 8, 2016, Williams filed an administrative remedy procedure complaint ("ARP"), No. 0230-16, regarding his fall. According to Williams, it was dismissed without a response or a proper investigation. In fact, on April 11, 2016, the ARP was dismissed pending resubmission, and Williams was instructed to provide the following information: the names of staff he notified about the water on the floor, whether and when he received medical treatment, and the names of all staff involved. Williams was given until April 26, 2016 to resubmit his complaint.

On April 18. 2016, Williams filed a timely resubmission, but it was again dismissed pending resubmission. A copy of the resubmitted ARP is not provided in the record, nor is there an explanation regarding why the resubmission was inadequate. Williams did not file a second resubmission.

On June 10, 2016, Williams filed an appeal of the dismissal of his ARP with the Commissioner of Correction. According to Williams, this appeal was dismissed two years later, without a proper investigation. Also on June 10, 2016, Williams attempted to file an appeal with the Inmate Grievance Office ("IGO") relating to his slip and fall. In that grievance, Williams described how he slipped and fell on water on his cell floor on April 7, 2016. In a letter dated September 1, 2016, IGO Deputy Director Robin Woolford instructed Williams to submit copies of all ARP paperwork not previously provided within 30 days in order to assist with a determination whether he had exhausted administrative remedies. Williams was forewarned that the failure to provide an appropriate response would result in dismissal of his IGO grievance. Williams responded by providing a copy of his April 18, 2016 ARP resubmission, which he had filed with the Warden of MRDCC.

In a letter dated January 9, 2017, the IGO directed Williams to submit within 30 days evidence that he had appealed the Warden's response to the Commissioner of Correction. Specifically, Deputy Director Robin Woolford advised:

> In order for the IGO to determine whether you have properly exhausted an available ARP remedy, whether you have timely filed this grievance, and whether you have filed grievance in the proper manner, COMAR 12.07.01.04(B)(9)(a) requires that you submit with your grievance at the outset of the grievance process all related ARP paperwork, including your ARP complaint to the Warden, any receipt from the Warden, any response from the Warden, any receipt for the Warden's response, any ARP appeal to the Commissioner, any receipt from the Commissioner, and any response from the Commissioner. I note that you have provided only a copy of your original ARP complaint to the Warden.

3

IGO Letter at 2, ECF No. 12-4 at 17. Williams was again warned that the failure to provide the required paperwork would result in the dismissal of his grievance "as having been determined to be wholly lacking in merit, without further notice." *Id.*

On or about January 23, 2017, Williams responded to this letter by submitting copies of his ARP appeals to the Commissioner, one filed in June 2016 and one in August 2016, to which Williams claimed to have received no response. Williams also asserted that he had never received a response from the Warden to his resubmitted ARP. Later, Williams provided the IGO with a copy of a February 1, 2017 letter he had received from Maryland State Treasurer's Office in response to a state law tort claim he had filed, advising that the adjudication of his claim would be stayed pending a decision from the IGO.

In a letter dated April 13, 2017, Deputy Director Woolford informed Williams that the ARP appeal to the Commissioner he provided "bears no indicia, such as a date stamp or receipt, that it was received by the Commissioner" and that it appeared that "you have failed properly to exhaust the ARP process before filing this grievance." IGO Letter at 1, ECF 12-4 at 29. Williams was provided 30 days to show cause why his grievance should not be dismissed for failure to exhaust the ARP process.

In a written response on April 30, 2017, Williams explained that he had mailed his appeal to the Commissioner of Correction on April 18, 2016, after he did not receive a response from the Warden to his resubmitted ARP. Because he did not write his appeal on forms with carbon copies attached, he asked an office at MRDCC to have a copy mailed to him at Western Correctional Institution ("WCI"), to which he was being transferred. Williams stated that despite this request, he did not receive a copy. He filed another appeal after he arrived at WCI, which was returned

4

because he did not use the correct address. Williams also expressed uncertainty whether staff at WCI could sign ARP receipts for an incident occurring at MRDCC.

On or about October 12, 2017, Williams again wrote a letter to the IGO. He stated that had been transferred to ECI and asserted that his grievance should not be dismissed for failure to exhaust the ARP process because he is uneducated. Williams admitted that he could ask for help from another inmate, but he stated that if asked for help he would have to pay for it and he did not have the money to pay for assistance.

On November 16, 2017, Deputy Director Woolford emailed Correctional Case Manager Specialist Chantell Session of the DPSCS to ask if Williams had filed an appeal of ARP No. MRDCC-0230-16 and, if located, to send Woolford a copy of it. In response, Session advised that no appeal of that ARP had been received. On April 10, 2018, in a letter to Williams, Woolford dismissed Williams's grievance as lacking in merit because he failed to exhaust the ARP process.

According to MRDCC Assistant Warden Christopher Smith, all new MRDCC inmates at MRDCC attend an orientation session within seven days of their arrival. Copies of the MRDCC Inmate Handbook are available in each housing unit and upon request. ARP forms have pre-printed instructions on the back to assist inmates attempting to file an ARP, which include an instruction that an appeal of the Warden's ARP response is due within 30 days. Inmates may request copies of the directives governing the ARP process through the ARP Coordinator or an inmate's assigned Case Management Specialist.

## DISCUSSION

In the Motion, Secretary Moyer seeks dismissal or summary judgment on various grounds, including that Williams failed to exhaust administrative remedies; Secretary Moyer is entitled to immunity from suit in his official capacity pursuant to the Eleventh Amendment to the United

States Constitution; there are no factual allegations raised against Secretary Moyer in the Complaint, and he cannot be held vicariously liable under § 1983; a claim of negligence is insufficient to state a constitutional claim; and a failure to follow the regulations or state law regarding processing ARPs is insufficient to support a due process claim. Because the undisputed facts establish that Secretary Moyer was not involved in the matters asserted, and the underlying claim is not one of constitutional dimension, the Motion will be granted.

## I.    Legal Standards

Moyer seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) or summary judgment pursuant to Rule 56. To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Moyer has submitted numerous exhibits with the Motion. Typically, when deciding a motion to dismiss under Rule 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Rule 12(d) requires courts to treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R.

Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the 12(b)(6) motion as a motion for summary judgment, and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted).

Here, the notice requirement has been satisfied by the title of Defendant's Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d), or another filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). *See Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 245 (4th Cir. 2002). Where Williams has filed no such affidavit, the Court will treat the motion as a Motion for Summary Judgment.

Under Federal Rule of Civil Procedure 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the motion, the Court views the facts in the light most favorable to the nonmoving party, "with all justifiable inferences" drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only

"genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.*

## II.    Supervisory Liability

The Complaint contains no direct allegation against Secretary Moyer. In a § 1983 claim, a defendant cannot be found liable under a theory of vicarious liability or *respondeat superior.* *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (holding that there is no *respondeat superior* liability under § 1983). Thus, Moyer's status as former Secretary of DPSCS does not alone subject him to liability. Under § 1983, any liability imputed to supervisory officials must be supported by evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to individuals like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994) (citations omitted).

Here, there are no allegations or evidence supporting a finding that Secretary Moyer was aware of the water in Housing Unit 5C or of Williams's efforts to seek redress through the ARP process. The Complaint will therefore be dismissed.

## III.    Section 1983 Liability

Even if Williams were granted leave to amend the complaint to name an appropriate defendant, the Court finds that his underlying allegations are insufficient to support a civil rights claim asserted under 42 U.S.C. § 1983. *See Goode v. Central Va. Legal Aid Soc'y, Inc.*, 807 F.3d 619, 624 (4th Cir. 2015). Williams's claim constitutes a "slip and fall" tort claim based on

negligence, which is not a cognizable claim under § 1983 because it does not arise under the Constitution or laws of the United States. *See Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986). To the extent that his claim could be construed as asserting a claim for cruel and unusual punishment under the Eighth Amendment to the Constitution, which would require a showing of deliberate indifference to inmate health and safety, the asserted facts do not support such a claim.

The "Eighth Amendment's prohibition on cruel and unusual punishments imposes certain basic duties on prison officials." *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Those duties include maintaining "reasonable measures to guarantee the safety of the inmates." *Id.* (quoting *Farmer*, 511 U.S. at 832). To demonstrate a violation of his Eighth Amendment rights, a plaintiff must satisfy a two-part inquiry that includes both objective and subjective components. *See Raynor*, 817 F.3d at 127. First, to satisfy the objective inquiry, the plaintiff "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or a substantial risk of such harm. *Danser v. Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014); *see also Farmer*, 511 U.S. at 834. The objective inquiry requires the Court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). To satisfy the subjective component of the test, a plaintiff must establish that the prison official involved had "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834. Evidence establishing a culpable state of mind requires actual knowledge of an excessive risk to the prisoner's safety, in that the prison officials both were aware of facts from which an inference could be drawn that a substantial risk of serious harm existed and that they actually drew that inference. *Id.* at 837.

Here, the tier records reveal that the water on the floor of Housing Unit 5C resulted from a sprinkler test, that a cleaning crew was called within minutes of that test, and that the crew arrived approximately 30 minutes later. Where correctional officials took immediate steps to address the hazard, there was no subjective knowledge of a substantial risk to inmate health and safety that went unaddressed. To the extent that the cleaning crew's response was not immediate, any arguable delay was, at worst, the result of negligence, not deliberate indifference by correctional officials. The Court therefore will grant summary judgment to Defendant.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss, or in the Alternative for Summary Judgment, will be GRANTED. The Complaint will therefore be DISMISSED. A separate Order shall issue.

Date: October 9, 2019

THEODORE D. CHUANG
United States District Judge